UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK COLSTON,

       Plaintiff,

                          CASE NO. 07-CV-12726-DT
                          JUDGE ROBERT H. CLELAND
                          MAGISTRATE JUDGE PAUL J. KOMIVES

v.

GABRIAL CRAMER,

       Defendant.
                                       /

### REPORT AND RECOMMENDATION REGARDING
### PLAINTIFF'S COMPLAINT (Doc. Ent. 1) and
### PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL (Doc. Ent. 7)

**I.**     **RECOMMENDATION:** The Court should direct the Clerk of this Court to enter Cramer's default pursuant to Fed. R. Civ. P. 55(a). Also, the Court should enter an order denying without prejudice plaintiff's motion for appointment of counsel. Doc. Ent. 7.

**II.**     **REPORT:**

**A.**     **Background**

On or about March 8, 2005, while plaintiff was at Cooper Street Facility (JCS), he spoke with Inspector Kevin Lindsey, during which time Lindsey mentioned plaintiff's lawsuit against Diana Redick, the kitchen supervisor at the Deerfield Correctional Facility (ITF) in Ionia, Michigan.[1] Doc. Ent. 1 ¶¶ 1, 3 (Case No. 06-CV-00088-RHB-TPG); Doc. Ent. 1 at 2-3 (*Colston*

---

[1] In 2002, plaintiff filed three cases against Diana Redick in the Western District of Michigan: (1) *Colston v. Redick, et al.*, Case No. 02-CV-00411-GJQ-HWB (dismissed without prejudice for failure to exhaust); (2) *Colston v. Redick, et al.*, Case No. 02-CV-00571-GJQ-HWB (sexual harassment claim dismissed for failure to state a claim and retaliation claims dismissed without prejudice for failure to exhaust) and (3) *Colston v. Redick*, Case No. 02-CV-00779-RAE-ESC (stipulation for dismissal with prejudice and without costs).

*v. Redick*, Case No. 02-CV-00779-RAE-ESC). On March 14, 2005, plaintiff was transferred from JCS to Hiawatha Correctional Facility (HTF). Doc. Ent. 134-9 (Case No. 02-CV-00779-RAE-ESC).

Thereafter, plaintiff alleges, JCS Corrections Officer Gabrial Cramer sent plaintiff "some letters and a money order with the intended purpose of Correctional Officials at (HTF) intercepting them and using them to label him a problem to security." Doc. Ent. 1 ¶ 3. Plaintiff claims Cramer knew that sending plaintiff these items was against MDOC policy, knew it would be considered overly familiar behavior and knew it would be used "to label Plaintiff as a security problem." Doc. Ent. 1 ¶¶ 4, 5.

On March 18, 2005, plaintiff wrote to the HTF mailroom regarding the status of his mail, as his family told him they had sent a money order. Doc. Ent. 1 ¶ 5 (Case No. 06-CV-00088-RHB-TPG). In a March 2005 response to plaintiff's inquiry, Pam Ellis, a mail room supervisor at HTF, informed plaintiff that $50.00 had been deposited, but she did not inform plaintiff that his "mail was being intercepted . . . and inspected by Inspector Falbo." Doc. Ent. 1 ¶¶ 6-7 (Case No. 06-CV-00088-RHB-TPG).[2] On March 24, 2005, Lindsey advised Falbo, HTF Inspector, about his (Lindsey's) suspicions that Cramer might attempt to contact Colson. Doc. Ent. 134-9 (Case No. 02-CV-00779-RAE-ESC).

On April 1, 2005 and April 12, 2005, Falbo contacted Lindsey about intercepted letters addressed to Colston. Doc. Ent. 134-9 (Case No. 02-CV-00779-RAE-ESC). On April 14, 2005, Cramer was interviewed by Lindsey, after which time she resigned from the MDOC. This is

---

[2]On March 24, 2006, plaintiff filed *Colston v. Ellis, et al.*, Western District of Michigan Case No. 06-CV-00088-RHB-TPG.

reflected in an April 16, 2005 memorandum from Lindsey to Bruce Curtis, JCS Warden, regarding Cramer. *Id.* The memorandum notes that Falbo had located several letters and a money order from Cramer. *Id.* After plaintiff learned about this memorandum, he "requested an administrative hearing to challenge the fact Defendant Cramer sent him letters and money order and to challenge the fact the information is being used by Correctional Officials to label [plaintiff] a security problem." Doc. Ent. 1 ¶ 7.

In May 2005, Cramer informed plaintiff that she (Cramer) had been approached by Corrections Officer Amy Bierka, JCS, to see if Cramer was willing to "befriend Plaintiff and his family to give the appearance of him being a stalker of female Correction Officials." Doc. Ent. 1 ¶ 8 (Case No. 06-CV-00088-RHB-TPG). On August 9, 2005, Cramer visited plaintiff at HTF. *Id.* ¶ 10.[3]

**B.     Previous Lawsuits**

Plaintiff is or has been a party to several lawsuits in this Court. His first two lawsuits were (1) *Colston v. Burke*, Case No. 98-CV-10146-VAR, a petition for writ of habeas corpus, and (2) *Colston v. Lindsey and Bierka*, Case No. 06-CV-11001-NGE-DAS, closed on October 4, 2006 by Judge Edmunds' judgment granting defendants' motion for summary judgment and dismissing the case.

Then, plaintiff sued the instant defendant three times: (1) *Colsten v. Cramer*, Case No. 06-CV-14842-TLL-CEB, closed on June 7, 2007 by Judge Ludington's order dismissing the complaint with prejudice for failure to timely file a grievance; (2) *Colston v. Cramer*, Case No.

---

[3]On November 30, 2005, plaintiff filed *Colston v. Lindsey, et al.*, Case No. 05-CV-00282-RHB-TPG, in the Western District of Michigan. On February 13, 2006, Judge Bell dismissed the case without prejudice for failure to show exhaustion.

07-CV-11061-GER-VMM (transferred from the Western District [Case No. 07-CV-00124-GJQ-HWB]) and (3) *Colston v. Cramer*, Case No. 07-CV-12221-TLL-PJK, closed on July 19, 2007 by Judge Ludington's order dismissing the case as duplicative to Case No. 07-CV-11061-GER-VMM.[4]

C.     **The Instant Case**

On June 28, 2007, plaintiff filed the instant case against Cramer. In this lawsuit, plaintiff alleges a violation by Cramer of plaintiff's Fourteenth Amendment rights to due process and equal protection. Doc. Ent. 1 at 1. Plaintiff claims that Cramer "knowingly and willingly participated in a conspiracy with Correctional Officials to retaliate against Plaintiff, as a result of a previous law suit he filed against . . . Redick[.]" Doc. Ent. 1 at 2 ¶ 1. According to plaintiff, "Correctional Officials denied [him] a right to an administrative hearing to challenge the information and the opportunity to read the information." Doc. Ent. 1 ¶ 8. Plaintiff claims that "Correctional Officials have not provided him with a notice of package mail rejection as required by [MDOC PD 05.03.118]." Doc. Ent. 1 ¶ 10. In addition to alleging a violation of policy, plaintiff asserts a violation of his Fourteenth Amendment rights to due process and equal protection of the law. Doc. Ent. 1 at 4 ¶ 11.

Plaintiff claims that the content of Cramer's March and April 2005 letters "is being used by Correctional Officials to label him as a security problem, enhance his parole guide lines, deny him the opportunity to participate in certain programs, and he is being denied an opportunity for parole." Doc. Ent. 1 ¶ 12. Plaintiff claims "the information will continue to reduce the

---

[4]In this complaint, plaintiff alleges that Cramer "sexually assaulted [him] on numerous occasions, while he was a prisoner at [JCS]." Doc. Ent. 1 ¶ 1 (Case No. 07-CV-11061-GER-VMM).

4

likelihood of him getting paroled." He seeks, inter alia, injunctive, compensatory and punitive relief. Doc. Ent. 1 at 5.

On July 5, 2007, Cramer was served with a copy of the complaint at 405 South Gorman, Jackson, Michigan 49203. She executed the waiver of service of summons on July 6, 2007. Doc. Ent. 8.

Plaintiff is currently incarcerated at Ojibway Correctional Facility (OCF) in Marenisco, Michigan.[5] Judge Cleland referred this case to me on August 3, 2007 to conduct pretrial matters. Doc. Ent. 6.

**D.    Plaintiff's Motion for Appointment of Counsel**

Pending before the Court is plaintiff's August 22, 2007 motion for appointment of counsel. Doc. Ent. 7. Noting that Judge Cleland's August 3, 2007 order sets the trial in this case on the Court's September/October 2008 trailing docket, plaintiff alleges he cannot afford counsel, the case involves a complex issue, he is only permitted six hours per week in the prison law library, the prison law library materials are very limited, and plaintiff's knowledge of the law is limited. Furthermore, plaintiff contends that corrections officials continue to retaliate against him as a result of the instant lawsuit, plaintiff's mail is being held at OCF for two to three weeks before he receives it and his mail was not being delayed before he filed the instant lawsuit. Plaintiff contends that counsel "would be able to complete [deposition], discovery, receive mail from Plaintiff['s] witness and perform any other legal duties that would be in the best interest of Plaintiff." Doc. Ent. 7 at 1-2 ¶ 4. Plaintiff served defendant with a copy of this motion at 405 South Gorham, Jackson, Michigan 49203. Doc. Ent. 7 at 3.

---

[5]*See* www.michigan.gov/corrections, "Offender Search."

**E.     Fed. R. Civ. P. 55 ("Default")**

**1.**     With regard to the entry of default, Rule 55 states: "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default."  Fed. R. Civ. P. 55(a).

**2.**     With regard to a judgment of default, Rule 55 states:

> "Judgment by default may be entered as follows:
>
> (1) By the Clerk. When the plaintiff's claim against a defendant is for a sum certain or for a sum which can by computation be made certain, the clerk upon request of the plaintiff and upon affidavit of the amount due shall enter judgment for that amount and costs against the defendant, if the defendant has been defaulted for failure to appear and is not an infant or incompetent person.
>
> (2) By the Court. In all other cases the party entitled to a judgment by default shall apply to the court therefor; but no judgment by default shall be entered against an infant or incompetent person unless represented in the action by a general guardian, committee, conservator, or other such representative who has appeared therein. If the party against whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any statute of the United States.

Fed. R. Civ. P. 55(b).

"Judgments by default are a drastic remedy and should be resorted to only in extreme situations." *Charlton L. Davis & Co., P. C. v. Fedder Data Center, Inc.*, 556 F.2d 308, 309 (5th Cir. 1977) (citing *E. F. Hutton & Co., Inc. v. Moffatt*, 460 F.2d 284, 285 (5th Cir. 1972)).  *See also Affanato v. Merrill Bros.*, 547 F.2d 138, 140 (1st Cir. 1977).

6

**3.** With regard to setting aside default, Rule 55 provides: "For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." Fed. R. Civ. P. 55(c).

**4.** Also, Rule 55 provides that "[t]he provisions of this rule apply whether the party entitled to the judgment by default is a plaintiff, a third-party plaintiff, or a party who has pleaded a cross-claim or counterclaim. In all cases a judgment by default is subject to the limitations of Rule 54(c)." Fed. R. Civ. P. 55(d).

**E.     Analysis**

**1.     The Court should conclude that Cramer has defaulted, because she "has failed to plead or otherwise defend as provided by these rules[.]" Fed. R. Civ. P. 55(a).**

**a.** The Fifth Circuit has stated that "[t]he appearance required by [Rule 55(b)(2)] has been broadly defined, and not limited to a formal court appearance." *Charlton L. Davis & Co.*, P. C., 556 F.2d at 309. "Though it is true that defendants made no formal appearance and filed no papers, courts now look beyond the presence or absence of such formal actions to examine other evidence of active representation. Several cases have held that informal contacts between parties may constitute an appearance. The contacts must 'indicate the defaulting party intends to defend the suit.'" *Lutomski v. Panther Valley Coin Exchange*, 653 F.2d 270, 271 (6th Cir. 1981) (quoting 6 Moore's P 55.05(3)).

"Normally, an appearance in an action 'involves some presentation or submission to the court.'" 10A Wright, Miller & Kane, Fed. Prac. and Proc. § 2686 (3d ed.). "Defendant's filing of an answer constituted an 'appearance' for purposes of Rule 55, and thus the subsequent entry of a default judgment by the clerk was improper, since only the court could enter a default judgment once defendant had made an appearance in the case." 10A Wright, Miller & Kane,

7

Fed. Prac. and Proc. § 2686 (3d ed.) (citing *United States v. Smith*, 212 F.R.D. 480 (M.D.N.C. 2002)). *See also Ragnone v. Wirsing*, 141 Mich. App. 263, 265-266, 367 N.W.2d 369, 370 (1985) (on appeal from entry of default judgment, "defendant's attorney communicated with plaintiff for the purpose of negotiating a settlement, wrote a letter seeking an extension of time for filing an answer, and even attended the scheduled meeting. We find this to be consistent with the policy expressed in *Deeb [v. Berri, 118 Mich. App. 556, 325 N.W.2d 493 (1982)]*, as defendant's attorney was aware of the proceedings and demonstrated an intention to appear."); *Law Offices of Lawrence J. Stockler, P.C. v. Semaan*, 135 Mich. App. 545, 551, 355 N.W.2d 271, 274 (1984) (on appeal from order denying motion to set aside a default and default judgment, "defendant's belated filing of an answer constituted an appearance.").

**b.**     On June 29, 2007, Magistrate Judge Whalen entered an order directing service without prepayment of cost and authorizing the U. S. Marshal to collect costs after service is made. Doc. Ent. 4. The United States Marshal Service received the documents for service of process on July 3, 2007. Doc. Ent. 5. On July 5, 2007, the U. S. Marshal sent Cramer waivers of service of summons at two different Jackson, Michigan 49203 addresses - one at 405 South Gorman and the other at 1013 South Dettman. Doc. Entries 8 and 9.

Cramer waived service of summons on July 6, 2007 via the form sent to the South Gorman address. Doc. Ent. 8. Her answer was due on September 4, 2007 - sixty (60) days from the date on which the waiver of service of summons was sent to her. Fed. R. Civ. P. 6(a). To date, Cramer has not filed an answer to the complaint.

On October 16, 2007 and again on November 16, 2007, my law clerk spoke with Christine M. Campbell, Assistant Attorney General, Corrections Division, regarding whether the

Attorney General for the State of Michigan would be representing Cramer in this matter. During the latest conversation, Ms. Campbell informed my law clerk that defendant had been located outside the State of Michigan and that the Attorney General's Office cannot do anything until Cramer goes through the procedure for requesting representation by the Attorney General.

It is clear from the record that Cramer was served with the instant complaint and that she has not filed an answer. Furthermore, it appears that Cramer has not been responsive to the MDOC's attempts to determine whether she requests the Attorney General's representation in this matter. For these reasons, the Court should direct the Clerk of this Court to enter Cramer's default for her failure to respond to plaintiff's June 28, 2007 complaint.[6]

**2.     Accordingly, the Court should direct the Clerk of this Court to "enter the party's default." Fed. R. Civ. P. 55(a).**

**a.**     "An entry of default is not a default judgment." *Arango v. Guzman Travel Advisors*, 761 F.2d 1527, 1530 (11th Cir. 1985). "The two concepts are distinct and must be treated separately[.]" *United States v. Topeka Livestock Auction, Inc.*, 392 F. Supp. 944, 950 (N. D. Ind. 1975).

"When a party 'has failed to plead or otherwise defend' against a pleading listed in Rule 7(a), entry of default under Rule 55(a) must precede grant of a default judgment under 55(b)." *Johnson v. Dayton Electric Manufacturing Co.*, 140 F.3d 781, 783 (8th Cir. 1998). *See also O'Grady v. Johnson*, 2006 WL 2403579, 4 (D. Minn. 2006) (slip copy) ("there has been no entry of default under Rule 55(a) in this case, a condition precedent to the entry of default judgement

---

[6]Even though the Attorney General has not filed an appearance on Cramer's behalf, I am directing the Clerk of this Court to forward a copy of this report and recommendation to Assistant Attorney General Christine M. Campbell. I do so based upon the MDOC's recent attempt to determine Cramer's position on representation in this matter.

under Rule 55(b)."); *Ramada Franchise Systems, Inc. v. Baroda Enterprises*, LLC, 220 F.R.D. 303, 305 (N. D. Ohio 2004) ("[A]n entry of default is a prerequisite to a default judgment."); *In re Schulman*, 196 B.R. 688, 692 (Bankr. S.D.N.Y. 1996) ("When a defendant fails to answer, the first step leading to a default judgment is the entry of default with the clerk of the court."); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993) ("The entry of default is an interlocutory act and, as such, a non-final order."); *Shepard Claims Service, Inc. v. William Darrah & Associates*, 796 F.2d 190, 193 (6th Cir. 1986) (commenting that "entry of default is just the first procedural step on the road to obtaining a default judgment[.]").[7] As one Court has stated:

> The procedural steps contemplated by the Federal Rules of Civil Procedure following a defendant's failure to plead or defend as required by the Rules begin with the entry of a default by the clerk upon a plaintiff's request. Rule 55(a). Then, pursuant to Rule 55(c), the defendant has an opportunity to seek to have the default set aside. If that motion is not made or is unsuccessful, and if no hearing is needed to ascertain damages, judgment by default may be entered by the court or, if the defendant has not appeared, by the clerk. Rule 55(b). Finally, Rule 55(c) authorizes a motion to set aside a default judgment pursuant to Rule 60(b).

*Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981).

In *Meehan*, the Court observed that "[t]he omission of the entry of a default was largely technical because the hearing on the appellees' motion for the entry of a default judgment afforded the appellants the same opportunity to present mitigating circumstances that they would have had if a default had been entered and they had then moved under Rule 55(c) to set it aside." *Meehan*, 652 F.2d at 276. However, the Court explained that "[e]ntering a default pursuant to Rule 55(a) and affording a defendant an opportunity to move to vacate it pursuant to Rule 55(c)

---

[7]*But see Walters v. Statewide Concrete Barrier, Inc.*, No. C-04-2559 JSW (MEJ), 2006 WL 2527776, *3 (N. D. Ca. Aug. 30, 2006) (slip copy) (entries of default "judgments are appropriate where the defendant has never appeared in the action, its failure to defend is unexplained, and the plaintiff would suffer prejudice if the default were not entered.").

is the preferable course because it avoids the need to prepare for and pursue a damage hearing in those instances where the Rule 55(c) motion is granted." *Meehan*, 652 F.2d at 276 n.5.

One court has noted that, on appeal from entry of default judgment, "[t]he case law on a motion to set aside an entry of default under Fed.R.Civ.P. 55(c) does shed some light on the factors that a trial court ought to consider in deciding whether to grant a motion for entry of default and to enter a default judgment:

> A trial court's determination of whether to set aside an entry of default is inherently similar to the court's initial determination whether to grant an entry of default and to enter a default judgment in the first place. After all, the fundamental, underlying question is the same: do the circumstances justify resolution of the case on the basis of one party's failure to plead or defend, rather than on the merits of the case? As a result, logic dictates that the same factors that should be considered when making a determination under the "good cause" standard of Rule 55(c) similarly should be considered when ruling on a party's initial motion for entry of default and when deciding whether to enter a default judgment.

*Schiff v. State of R.I.*, 199 B.R. 438, 441 (D.R.I.. 1996). *See also* 10A FPP § 2692 ("[W]hen deciding a motion for the entry of a default judgment, the court also often will consider whether sufficient grounds have been disclosed to justify vacating the default judgment upon a subsequent application under Rule 55(c)."); *In re Arthur Treacher's Franchise Litigation*, 92 F.R.D. 398, 416 n.21 (E. D. Pa. 1981).

"When a defendant seeks relief from an entry of default, three equitable factors are considered to determine if 'good cause' has been shown under the Rule 55(c) component of the analysis: (1) whether culpable conduct of the defendant led to the default, (2) whether the defendant has a meritorious defense, and (3) whether the plaintiff will be prejudiced.'" *Burrell v. Henderson*, 434 F.3d 826, 831-832 (6th Cir. 2006) (citing *Waifersong, Ltd. Inc. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir.1992)). *See also Weiss v. St. Paul Fire and Marine*

11

*Ins. Co.*, 283 F.3d 790, 794 (6th Cir. 2002) ("the same factors that control a motion to vacate an entry of default under Rule 55(c) are also applicable in determining whether to vacate a default judgment: (1) whether the opposing party would be prejudiced; (2) whether the proponent had a meritorious claim or defense; and (3) whether the proponent's culpable conduct led to the default.") (citing *United Coin Meter Co., Inc. v. Seaboard Coastline RR.*, 705 F.2d 839, 845 (6th Cir. 1983)).

Another court has stated that, with respect to vacating a default judgment, "[w]hen determining whether a defaulting party has shown good cause sufficient to justify setting aside an entry of default, the Court considers three main factors: 1) whether the defaulting party defaulted wilfully, 2) whether setting aside the clerk's entry of default would prejudice the defaulting party's adversary, and 3) whether the defaulting party has presented a meritorious defense." *Bryan v. Butler*, 163 F.R.D. 175, 176 -177 (N.D.N.Y. 1995) (citing cases). *See also Heber v. U.S.*, 145 F.R.D. 576, 578 (D.Utah 1992) (on review of plaintiff's motion to strike defendant's answer and to dismiss which was treated by the court as a motion for entry of default judgment, the court considered "(1) whether the default was wilful; (2) whether defendant has a meritorious defense; and (3) whether any prejudice will result to the nondefaulting party if relief is granted.").

"The Court may also consider other relevant equitable factors, such as whether the defaulting party failed to follow a procedural rule because of a mistake made in good faith and whether preserving the entry of default would produce a harsh or unfair result." *Bryan*, 163 F.R.D. at 177. *See also Hudson v. State of N.C.*, 158 F.R.D. 78, 80 (E.D.N.C.,1994) (on review of plaintiff's motion for default judgment, "[f]actors to consider in this exercise [the entry of

default] include whether the plaintiff will be prejudiced and, if so, the extent thereof, and whether the entry of default judgment would result in injustice.") (*Carwile v. Ray*, 481 F.Supp. 33, 35 (E. D. Wash. 1979)).

**b.**     To begin, it appears that Cramer's failure to plead or defend is willful. She waived service of summons on July 6, 2007, via a form which stated that her answer would be due "60 days from the date designated below as the date on which th[e] notice [was] sent." Doc. Ent. 8. Nonetheless, no answer has been filed. In the absence of any filing whatsoever from Cramer, the Court can only assume that Cramer is culpable for the failure to respond. This conclusion is supported by the Assistant Attorney General's representation that the MDOC's has located Cramer outside of the State of Michigan and that Cramer has not availed herself of the procedure to request the Attorney General's representation in this matter.

It goes without saying that plaintiff will be prejudiced in seeking the relief set forth in his complaint if Cramer does not "plead or otherwise defend[.]" Fed. R. Civ. P. 55(a). It is not clear whether Cramer has a meritorious defense, because she has yet to file a single document in this case. Therefore, the Court can only speculate regarding her position on the instant case.

**c.**     Furthermore, it is not clear why Cramer did not follow the procedural rule of filing an answer by September 4, 2007. Fed. R. Civ. P. 4(d)(3). However, entry of default by the Clerk would not render "a harsh or unfair result." *Bryan*, 163 F.R.D. at 177. In accordance with the procedure described in *Meehan*, 652 F.2d at 276, Cramer may file a Rule 55(c) motion to set aside the default.

**d.**     Despite my foregoing conclusion that Cramer's default appears to be willful, a factor favoring the denial of a Rule 55(c) motion by Cramer to set aside a default entered against her, I

13

limit my recommendation to directing the Clerk of the Court to enter default against Cramer pursuant to Rule 55(a). First, this opinion (1) cannot address the meritoriousness of any defense Cramer asserts to the instant complaint and (2) does not assess any prejudice resulting to plaintiff were Cramer's default to be entered and then set aside, both factors for determining good cause under Rule 55(c). Second, although "[a]s a practical matter, [the Court] need consider only whether a default judgment is appropriate in this case: if it is, then it follows that the lesser standard of Rule 55(a) is satisfied; if not, then entry of a default by the Clerk would be a waste of effort[,]" *Systems Industries, Inc. v. Han*, 105 F.R.D. 72, 74 (E. D. Pa. 1985), I conclude that following the procedure described in *Meehan* is the best course of action at this time.

**3.     Furthermore, the Court should deny without prejudice plaintiff's motion for appointment of counsel.**

Proceedings in forma pauperis are governed by 28 U.S.C. § 1915, which states that "[t]he court may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). The Sixth Circuit has stated:

> Appointment of counsel in a civil case is not a constitutional right. It is a privilege that is justified only by exceptional circumstances. In determining whether 'exceptional circumstances' exist, courts have examined the type of case and the abilities of the plaintiff to represent himself. This generally involves a determination of the complexity of the factual and legal issues involved.

*Lavado v. Keohane*, 992 F.2d 601, 605-606 (6th Cir. 1993) (internal quotations and citations omitted). "In determining whether an indigent litigant is in need of appointed counsel, a number of factors are relevant including: the factual complexity of the case, the ability of the indigent to investigate the facts, the existence of conflicting testimony, the ability of the indigent to present

his claim and the complexity of the legal issues." *Abdullah v. Gunter*, 949 F.2d 1032, 1035 (8th Cir. 1991) (citing *Johnson v. Williams*, 788 F.2d 1319, 1322-1323 (8th Cir.1986)).[8]

Several filings indicate plaintiff's ability to bring his requests to this Court. First, plaintiff's pro se complaint appears to comply with Fed. R. Civ. P. 8(a). It contains a preliminary statement, a statement of jurisdiction and a statement of venue, Doc. Ent. 1 at 1-2; identifies the parties, Doc. Ent. 1 at 2; sets forth "facts giv[ing] rise to the cause of action", Doc. Ent. 1 at 2-4 ¶¶ 1-12; alleges a "claim of relief" and "requested relief", Doc. Ent. 1 at 5. Furthermore, his complaint cites 42 U.S.C. § 1983 ("Civil action for deprivation of rights"), the Due Process and Equal Protection clauses of the Fourteenth Amendment to the United States Constitution, and MDOC PD 05.03.118 ("Prisoner Mail"). Moreover, plaintiff refers to appropriate sections of MDOC PD 05.03.118. Doc. Ent. 1 at 4 ¶ 9. He cites two paragraphs of the policy's "Prohibited Incoming Mail" section - ¶ HH19 (mentioning mail containing personal information about an employee or the employee's family) and ¶ JJ (regarding Notice of Package/Mail Rejection [CSJ-316]) .

---

[8]The Second Circuit has noted "the importance of [its] ruling in *Hodge [v. Police Officers*, 802 F.2d 58 (2d Cir. 1986)] requiring the indigent seeking a free lawyer to first pass the test of likely merit." *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 173 (2d Cir. 1989). "In trial courts, the preliminary assessment of likely merit must be undertaken somewhat more generously since the unrepresented litigant might have difficulty articulating the circumstances that will indicate the merit that might be developed by competent counsel." *Cooper*, 877 F.2d at 174.
Also, the Fourth Circuit has stated, "[i]f it is apparent to the district court that a pro se litigant has a colorable claim but lacks the capacity to present it, the district court should appoint counsel to assist him." *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), abrogated by *Mallard v. U.S. Dist. Court for Southern Dist. of Iowa*, 490 U.S. 296, 298 (1989) (holding that "28 U.S.C. § 1915(d) [does not] authorize[] a federal court to require an unwilling attorney to represent an indigent litigant in a civil case.").

Second, plaintiff filed an application to proceed without prepayment of fees (Doc. Ent. 2), and that application was granted by Magistrate Judge Whalen (Doc. Ent. 3). As a result, the Court entered an order directing service without prepayment of fees and authorizing the U. S. Marshal to collect costs after service is made. As noted above, the record indicates that Cramer signed the waiver of service of summons on July 6, 2007. Doc. Ent. 8.

Third, the instant motion to appoint counsel cites 42 U.S.C. § 1915, the statute governing proceedings in forma pauperis. Doc. Ent. 7. This, too, indicates plaintiff's ability to communicate his requests to the Court.

At this stage of the litigation, the Court should conclude that appointment of counsel is not warranted. Should this case proceed to trial, plaintiff should be permitted to renew his request for appointment of counsel.

### III. NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                          s/PAUL J. KOMIVES
                                          PAUL J. KOMIVES UNITED STATES MAGISTRATE JUDGE

Dated: November 28, 2007

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on November 28, 2007.

                                          s/Susan Jefferson